## McCall *v.* White.

10 577
107 559

10 577
e116 633

A father in the State of Mississippi, in consideration of natural love and affection executed a deed to a slave in favor of his daughter, a married woman. The deed contained the following clause " To have and to hold the said negro to her [the daughter] and heirs and assigns forever, preserving to myself, however, and it is hereby expressly understood, as a part and parcel of the present that the said negro shall be and remain with me and subject to my control during the term of my natural life, without subjecting myself, my heirs, &c., on account of services or hire of the said slave." The daughter died. The father and his son-in-law removed to Louisiana and lived together, until the death of the father, some years after. The son-in-law then sold the slave which had been conveyed to his wife, and her children set up their claim, as heirs of their mother against the purchaser. *Held:* At the instant of the execution of the deed the title and possession in the slave vested in the daughter, whose husband, in virtue of such transfer of the title and possession to his wife during marriage, became the owner of the slave, subject to the loan for service to the father during his natural life, and after the death of his wife and his father-in-law, the husband had a right to sell the slave.

APPEAL from the District Court of Caddo, *Land,* J.

Looney, for plaintiff and appellant :

Fee simple must be vested in some person. If in the wife, upon the execution of the act, it could not be in the husband until actual possession. The wife died leaving plaintiff heir of her body in 1836. The husband could do no act either as husband or as administrator until 1846, in order to vest title in him.

Then in whom was the title vested in fee simple from the death of the wife in 1836, until the possession of the husband personally in 1846 ? It cannot have been in the husband without possession or even a right of possession. It then must have fallen to the heirs of the wife at her death by regular descent, according to the law of Mississippi. See Hutchinson's Miss. Code 623, 624.

*Crain & Nutt,* for defendant :

The husband had an absolute power over any personal estate or interest accruing to the wife by gift, devise or otherwise. Bacon's Abridgment (Baron & Femme D.) And after her death his right was not only to administer but to enjoy exclusively the personal effects of the deceased wife *Jure marito,* 2 Blackstone's Com. 516. Mr. Justice Spenser, in the case of *Whitaker* v. *Whitaker,* 6 Johnson 118, says " that there is not an authority to be met with contradicting these well and clearly established principles." These principles have been recognized in Mississippi—1 Howard. 558, *Lowery* v. *Huston,* 3 Howard 849, and 4 Howard 214—and in every common law State, where the question has been discussed.

If it were true, as the plaintiffs contend, that the interest of their mother in the slaves was merely a *chose in action,* and would have survived to her in case her husband had died first, it would not avail the plaintiffs. The right of survivorship in *choses in action* which have not been reduced into possession by the husband, is personal to the wife and cannot be invoked in this case. 2 Kent 136, 411, 412, notes and authorities cited.

In *Knight* v. *Leake,* 2 Dev. & Battle, N. C., it was held that " that the husband *Jure maritali* has such a dominion over the vested legal interest of a wife in a chattel, real or personal, of which a particular estate is outstanding, that he can sell such interest." See also *Merriwether* v. *Booker,* 4 Littel 256, in which it was ruled that the husband could sell any vested reversionary interest, and in *Pinkerd* v. *Smith,* 1 Lit. Select Cases, that a vested remainder in slaves accruing to the wife during coverture vests in the husband as much as a right in possession. See also *Dade* v. *Alexander,* 1 Wash. 30. *Jackson* v. *Sublett,* 16 Munroe 467. The husband by survivorship was entitled to the negroes to the exclusion of the children, even if they had been the separate property of the wife.

73

McCALL
*v.*
WHITE.

BUCHANAN, J.  Plaintiffs claim two undivided sixth portions in ten slaves as heirs of their mother, deceased.

Defendant sets up his title to the slaves by purchase from *Thomas McCall,* the father of plaintiffs. And he pleads that the said *Thomas McCall* became the owner of said slaves, by virtue of a deed of gift from *Isaac Rounceval* to the wife of said *Thomas McCall,* on the 18th day of June, 1835.

The evidence shows that *Thomas McCall* and *Caroline Rounceval* were married in Franklin county, Mississippi, in the year 1816. They lived together as man and wife in the same county until 1836, when Mrs. *McCall* died.

There were born several children of this marriage, of whom the plaintiffs were two. During this marriage, to wit, the 18th June, 1835, *Isaac Rouncival,* father of Mrs. *McCall,* made a writing under seal, acknowledged before a Justice of the Peace, of Franklin county, and recorded, by which he gave, granted and sold to his said daughter, in consideration of natural love and affection, a certain negro woman named *Mary,* about twenty-four years of age, " to have and to hold the said negro unto her and heirs and assigns forever, preserving to myself, however, and it is hereby expressly understood, as a part and parcel of this present, that the said negro shall be and remain with me, and subject to my control, during the term of my natural life, without subjecting myself, my heirs, &c., on account of services or hire of the said negro."

In the following year, 1836, Mrs. *McCall* died, and her surviving husband, with his family, immediately thereafter, moved into Louisiana, where they have resided ever since. Mr. *Isaac Rounceval,* the father of Mrs. *McCall,* also moved into Louisiana, with his slaves, (those claimed in this suit included,) and lived with his son-in-law and grandchildren until his death, which took place in 1846.

The slaves claimed herein are *Mary,* who is mentioned in the above recited deed of gift, and her increase, being nine children, ranging from 21 to 3 years of age.

The deed signed by *Rounceval,* under which both parties claim, having been made in Mississippi, where all the parties lived, must have effect according to the law of Mississippi.

The counsel for defendant argues, that this deed creates what in the common law of Mississippi is called a life estate in the grantor, with a remainder over to Mrs. *McCall;* and that as slaves are chattel property in Mississippi, and this estate in remainder was a vested right in Mrs. *McCall* from the moment of the grant, the remainder in the slave inured at once to the benefit, and became the property of Mrs. *McCall's* husband, under the general principles of the common law. To this the counsel of plaintiffs reply, that the right of Mrs. *McCall* in the slave *Mary,* under the deed was a *chose in action,* and that marriage is only a qualified gift to the husband of the wife's *choses in action,* viz: on the conditon that he reduce them to possession during the continuance of the marriage, or if he survive his wife, that he administer on her effects, (*Marcenaro* v. *Bertoli,* 2 An. 981.): neither of which has been done in this case.

We have been much assisted in the investigation of the law in this case by the learned opinion of our brother of the District Bench. Still, as the case arises under a system of laws with which we are not very familiar, we cannot express our opinion upon it except with hesitancy.

We recognize the principle contended for by the plaintiffs' counsel, that at common law the husband has, by virtue of the marriage, only a qualified right to the *choses in action* of his wife, and that as a general rule this principle extends also to reversionary interests in things personal.

But we understand the principle to apply only to those cases in which the wife has not been vested with the legal ownership and possession at any time during the marriage: as where the legal title to personal property, to which the wife may be entitled by distribution, has remained in the executors and administrators after the death of the testator or intestate; or where the personal property has been conveyed directly to one for life, and remainder over to the wife. In this last case we suppose (in some of the States at least,) that the person taking the life estate would be decreed by the Court to act as trustee, in order to protect such remainder; for in a personal chattel the absolute conveyance of a life estate would, we think, so far vest the legal title and possession in the first taker, as to make him the proper person to protect such residuary interest of any other party, as might lawfully be limited by the vendor or donor.

An examination of the instrument in this case, however, leads us to think that by its execution, *eo instanti*, the title and possession in said slave *Mary*, vested in Mrs. *Caroline McCall*, the mother of the plaintiffs; that the husband by virtue of such transfer of the title and possession to his wife during the marriage became the owner of said slave, subject to the loan for service to *Isaac Rounceval* during his natural life.

The words used in the instrument are: "In consideration of the natural love and affection I have for my daughter, *Caroline McCall*, wife of *Thomas McCall*, I have given, granted and sold and by these presents do give, grant and sell unto her, the said *Caroline*, a certain negro woman named *Mary*, &c., to have and to hold the said negro unto her and heirs and assigns forever, preserving" &c.

This deed having been executed under seal, by the law of Mississippi operated as an absolute bar and estoppel to *Isaac Rounceval*, and to all persons claiming through him, to controvert or gainsay anything contained in it, and precludes them from saying that all the consequences which flow from a sale, and particularly the transfer of property and possession, was not a consequence of said act.

We think, therefore, that the sale of the negress clearly resulted from the instrument, notwithstanding the reservation of the services and hire of the slave to *Isaac Rounceval*, and that *Thomas McCall* was authorized, at least after the death of his wife, and the termination of the lease or loan for service, to take possession of the slave *Mary*, and her increase, as owner, and convey them to whomsoever he pleased.

We think that had *Isaac Rounceval* abused his right as bailee or lessee of the slave, (even during the life-time of *Caroline McCall*), that *Thomas McCall* could have caused the lease to be declared at an end.

So, if any third party had killed said slave or removed her beyond the jurisdiction of the Courts, *Thomas McCall* could, as the legal owner, have brought his action to recover damages for such injury.

It is therefore ordered, adjudged and decreed by the Court, that the judgment of the lower Court be affirmed, with costs.